# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 20050**

_____

**UNITED STATES**
*Appellee*

**v.**

**Anthony H. DICKSON**
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary[1]

Decided 10 February 2022

_____

*Military Judge:* Elizabeth M. Hernandez (pretrial matters); Christopher M. Schumann.

*Sentence:* Sentence adjudged 27 February 2020 by SpCM convened at Peterson Air Force Base, Colorado. Sentence entered by military judge on 27 March 2020: Confinement for 12 months, forfeiture of $1,155.00 pay per month for 12 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Captain Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and MEGINLEY, *Appellate Military Judges*.

Judge MEGINLEY delivered the opinion of the court, in which Chief Judge JOHNSON joined. Senior Judge KEY filed a separate opinion concurring in part and dissenting in part.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

[1] Appellant appeals his conviction under Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A), having been sentenced to more than six months' confinement.

_____

MEGINLEY, Judge:

In accordance with his pleas, the military judge convicted Appellant of one specification of wrongful use of cocaine on divers occasions, two specifications of wrongful use of methamphetamine on divers occasions, and one specification of wrongful use of marijuana, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a; and of one specification of dereliction of duty, and one specification of failure to obey a lawful general regulation on divers occasions, both in violation of Article 92, UCMJ, 10 U.S.C. § 892.[2,3] A panel consisting of officer members sentenced Appellant to confinement for 12 months, forfeiture of $1,155.00 pay per month for 12 months, reduction to the grade of E-1, and a reprimand.[4] On 19 March 2020, the convening authority issued the reprimand, but took no other action on the findings or sentence. The military judge signed the entry of judgment on 27 March 2020.

_____

[2] Three of the four Article 112a, UCMJ, specifications (wrongful use of cocaine, methamphetamine, and marijuana) alleged Appellant's misconduct occurred between 1 November 2018 and 14 August 2019; Appellant's failure to obey a lawful regulation under Article 92, UCMJ, alleged Appellant's misconduct occurred between 1 December and 14 August 2019. Therefore, because these specifications alleged misconduct before and after 1 January 2019, the *Manual for Courts-Martial*, *United States* (2016 ed.) will apply to those specifications. After Appellant's charges were preferred, Appellant again used methamphetamine on divers occasions from 30 December 2019 to 7 January 2020, leading to an additional charge and specification. Therefore, the *Manual for Courts-Martial*, *United States* (2019 ed.) will apply to that specification, as well the dereliction of duty specification, under Article 92, UCMJ, which also occurred after 1 January 2019. All charges and specifications were referred to trial by court-martial after 1 January 2019; therefore, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.).

[3] Appellant elected to have a panel of officers consider the remaining offenses. As a result, the members acquitted Appellant of one charge with one specification of wrongful and willful discharge of a firearm, to wit: while driving on a motorway under circumstances such as to endanger human life, in violation of Article 114, UCMJ, 10 U.S.C. § 914. Appellant was also charged with wrongful use of marijuana "on divers occasions." Although he pleaded guilty to a single use of marijuana, Appellant pleaded not guilty to the words "on divers occasions." The members found Appellant not guilty of the words "on divers occasions." Another charge and specification alleging Appellant recklessly discharged a firearm under Colorado law, assimilated under Article 134, UCMJ, 10 U.S.C. § 934, was withdrawn and dismissed without prejudice.

[4] Appellant received 51 days of pretrial confinement credit.

Appellant raises five issues on appeal: (1) whether trial counsel engaged in prosecutorial misconduct by making improper arguments during sentencing argument; (2) whether his sentence is inappropriately severe; (3) whether the convening authority erred by failing to take action on the sentence; (4) whether Appellant's discharge from the Air Force, while his case was still pending appellate review, deprived him of due process and violated guarantees of equal protection; and (5) whether the Air Force's failure to follow its own regulations when it discharged Appellant and while his case was still pending appellate review, constituted cruel and unusual punishment under Article 55, UCMJ, 10 U.S.C. § 855 and the Eighth Amendment.[5] We have carefully considered issues (4) and (5) and determined those issues warrant no discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).[6]

Finding no error that has materially prejudiced the substantial rights of Appellant, we affirm the findings and sentence.[7]

---

[5] U.S. CONST. amend. VIII. Appellant's fifth assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[6] *See, e.g.*, *United States v. Stanton*, 2019 CCA LEXIS 306, at *7 (A.F. Ct. Crim. App. 16 Jul. 2019) (unpub. op.) (finding "the administrative discharge is a matter outside the scope of our review defined by Article 66([d]), UCMJ, 10 U.S.C. § 866([d])" and therefore, "we act only with respect to the findings and sentence of the court-martial as approved by the convening authority, exactly as Article 66([d]) mandates"), *aff'd*, 80 M.J. 415 (C.A.A.F. 2021); *see also United States v. Davis*, 63 M.J. 171, 177 (C.A.A.F. 2006) (citations omitted) ("[T]he power of review authorities over the court-martial is unaffected by the administrative discharge.").

[7] Although not raised by Appellant, we have also considered whether he is entitled to relief for facially unreasonable post-trial delay. Appellant was sentenced on 27 February 2020 and his case was docketed with this court on 21 September 2020. This 207-day elapse exceeded the 150-day threshold for a facially unreasonable delay. *See United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (applying a 150-day threshold to an automatic appeal pursuant to 10 U.S.C. § 866(b)(3)). Assuming without deciding that the 150-day threshold also applies to an appeal brought under 10 U.S.C. § 866(b)(1)(A) (see note 1, *supra*), we have analyzed the factors set forth in *United States v. Moreno* and find no violation of Appellant's due process rights. 63 M.J. 129, 135 (C.A.A.F. 2006). In particular, we find the delay is primarily attributable to Appellant waiting from 24 June 2020, when the Government notified him of his right to appeal to this court, until 18 September 2020 to exercise that right. Moreover, we find Appellant has not been prejudiced and relief is not appropriate in this case in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

## I. BACKGROUND

Appellant entered active duty in July 2016 and was stationed at Peterson Air Force Base, Colorado, at the time of the offenses; he was 23 years old.

Although Appellant litigated two specifications at his court-martial (as described in note 3, *supra*), Appellant pleaded guilty to the aforementioned offenses. During his providence inquiry, Appellant admitted to dereliction of duty by failing to refrain from storing a firearm in his on-base dormitory room in July 2019. Appellant explained the firearm belonged to a friend, who was incarcerated. When another friend, who had possession of the weapon, told Appellant he was "going to throw out all belongings" of the incarcerated individual (including the weapon), Appellant offered to store the firearm at a different location. It is unclear from Appellant's providence inquiry when possession of the weapon was transferred to Appellant, but Appellant stated he did have access to the weapon prior to the offense. However, Appellant opined that at some point, someone else placed the firearm in Appellant's bag without Appellant's knowledge.

When Appellant returned to his dorm room, he found the weapon as he unpacked the bag. Appellant said his intention was "to bring the weapon off base as soon as possible, or alert Security forces." However, he stated he "passed out and took a nap instead." According to Appellant, security forces then came to his room, "tackled [him], and apprehended [him]." Appellant noted that "[a]t that point they had known that the gun was in [his] room." The gun was found on Appellant's bed.[8]

Appellant also pleaded guilty to violating a lawful general regulation by wrongfully inhaling isobutyl nitrate (also known as "poppers") for the purpose of altering his mood or function on divers occasions. Appellant explained that the poppers were sold "over-the-counter at recreational record shops and sex shops." Appellant then stated:

> When I bought the poppers, I had no idea that they were illegal to use. I used poppers on multiple occasions . . . . When I used them, they made me feel tingly, kind of a rush sensation. The

---

[8] Law enforcement's knowledge of Appellant's possession of the firearm came from a Snapchat video, in which Appellant recorded himself shooting a gun into an open field—conduct that formed the basis of the Article 114, UCMJ, charge and specification, of which Appellant was acquitted. A Snapchat "friend" of Appellant's, who had seen the video, showed it to an interim first sergeant, who contacted agents at the Air Force Office of Special Investigations. That same evening, law enforcement personnel went to Appellant's room where they found the firearm.

first time I used poppers was shortly after I had bought them in May 2019, and then I used again after that.

On 14 August 2019, at around 1030, while on base and in uniform, Appellant was found unresponsive and "slightly leaning outside of his car." Appellant was transported to a local emergency room where a sample of his urine was taken for medical testing. Appellant's urine sample tested positive for methamphetamine, cocaine, and marijuana. Appellant later voluntarily entered into an inpatient drug treatment program. Although he completed the inpatient treatment program, Appellant did not complete a subsequent six-week outpatient program due to noncompliance with the program. On 22 August 2019, during an interview with agents from the Air Force Office of Special Investigations (AFOSI), Appellant admitted to using drugs.

At his court-martial, Appellant pleaded guilty to one specification of wrongful use of cocaine on divers occasions and the two specifications of wrongful use of methamphetamine on divers occasions. Appellant's drug use began in December 2018. Specifically regarding Appellant's methamphetamine use, he stated during his providence inquiry that the first time he used it he thought he was using just cocaine; however, he later came to believe he had ingested cocaine "laced with methamphetamine." Regarding subsequent uses, Appellant explained that his preferred method of ingesting methamphetamine was smoking it:

> Smoking it is not as painful as snorting it and it made the drug come easier to me. Finding an easier way to use methamphetamine made me go from an occasional user at this point to a constant user. It's easier to keep doing it and keep going when you need it. At that point, my body and mind completely relied on it. During the instances that I used methamphetamine, the physical high from it was the same. It's like cocaine but more potent. I felt that heightened awareness, sharper focus, and energy.

In his interview with AFOSI, Appellant told agents that during the peak of his drug use, he would use methamphetamine eight times in a month, but he would only use on weekends. Despite having gone to an inpatient treatment program, and having charges preferred against him, Appellant again used methamphetamine in late December 2019 and early January 2020. Appellant described this use in his providence inquiry:

> I had been sober for months after going to an in-patient program . . . and an out-patient program. I had found myself in a very low place, again. One of my close friends had just committed suicide, and directly after that, my Chief had as well committed suicide.

> When I learned about my Chief committing suicide, I contemplated it myself. Instead of committing suicide, I turned to my old coping mechanism and smoked methamphetamine on several occasions. I felt all the same effects as before: energetic and artificially happy.

Appellant was placed into pretrial confinement shortly after he relapsed, and so remained until his court-martial.

## II. Discussion

### A. Challenges to the Trial Counsel's Sentencing Argument

#### 1. Additional Background

Appellant argues that during his sentencing argument, trial counsel engaged in improper argument by (1) mischaracterizing the evidence; (2) arguing facts not in evidence; (3) suggesting Appellant lacked remorse without the appropriate foundation; and (4) used personal pronouns to align himself with the members against Appellant.

First, Appellant argues that, in justifying the trial counsel's request that Appellant receive a bad-conduct discharge, trial counsel mischaracterized the evidence of Appellant's career performance. Appellant points to trial counsel's statements during argument that Appellant's "entire career has been plagued by nothing but bad conduct," and that Appellant "has got to get a bad conduct discharge." Trial counsel further argued: "Appellant's entire career, [three and a half] years, Members, he's still a first-term Airman, and more than half of that has been plagued with drug use, possession of a firearm, and using other intoxicating substances." Finally, as Appellant points out, "trial counsel argued that the members should give him a bad-conduct discharge because his service 'has been nothing but bad.'"

Second, Appellant states that trial counsel argued facts not in evidence. This allegation is in relation to Appellant's possession of the firearm in his dorm room. Appellant argues that the following portion of trial counsel's argument was improper:

> And he's confessed. He said it on tape . . . [H]e said he's had that gun for more than a month. Members, you're allowed to draw the inference that that was not the first time he was actually -- he actually had that gun in his dorm room. You are allowed to draw that inference. So who knows which one of his buddies he was showing that weapon to for the past month. Who knows how he was playing with that weapon for the past month in his dorm room?

6

Third, Appellant argues that trial counsel committed plain error by not laying a proper foundation when commenting on Appellant's lack of remorse. During his argument, trial counsel stated:

> Members, we talked a lot about drugs during this entire case, and I want to give you a quick quote from [Appellant] because he said in his interview with agent -- Agent [H]. He says "I did it. I did it. I was too blatantly obvious because I f***ed up at work." These are his words. That's how he views this. There's no remorse there, Members. The only remorse there is that he was caught. That someone saw him. Because what happened after he pulled up to that parking lot was he couldn't even make it out of the car. He was so high he couldn't even leave the vehicle.

Appellant also states trial counsel "disparaged" Appellant's addiction. He notes that trial counsel said Appellant was "partying up a storm," and his uses were at "random casual locations at after parties, parties, and in clubs," and how "[t]hat does not sound like a dependency issue. That sounds like a recreational issue."

Finally, Appellant takes issue with trial counsel's use of "I," "we," and "us" pronouns while delivering his argument. Appellant specifically points to trial counsel's argument where he stated, "[Appellant] was just partying up a storm . . . . Instead of celebrating by saying 'New Year New You' like the rest of us, he goes and does meth. That's what this member chooses to do. That is not a dependency, Members. That's a choice." Another instance is where trial counsel, responding to a portion of Appellant's unsworn statement, stated, "Members, we agree with [Appellant]. He said in his unsworn statement, which I must emphasize was unsworn. . . ." Trial counsel also used such phrases as: "I believe," "I talked about [a] bad conduct discharge," and "I do want to emphasize," referring back to the evidence and his justification for the Government's sentence recommendation.

While trial defense counsel did object to some aspects of the trial counsel's argument, at no time did trial defense counsel object to trial counsel's statements on the points he now raises on appeal.

### 2. Law

Improper argument is a question of law we review de novo. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citation omitted). When there is no objection, we review the propriety of trial counsel's argument for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citations omitted). To prevail under a plain error analysis, Appellant must show that "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)

(internal quotation marks and citations omitted), *aff'd sub nom.*, *Erickson v. Blanckensee*, No. 19-16165, U.S. App. LEXIS 34289 (9th Cir. 18 Nov. 2021).

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). "Prosecutorial misconduct occurs when trial counsel oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (internal quotation marks and citation omitted). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (internal quotation marks and citation omitted).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Frey*, 73 M.J. at 248 (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Three factors guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *Sewell,* 76 M.J. at 18 (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident than [an appellant] was sentenced on the basis of the evidence alone." *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013) (internal quotation marks and citation omitted).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (internal quotation marks and citation omitted). "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows." *Halpin*, 71 M.J. at 479 (internal quotation marks and citation omitted).

The lack of defense objection is some measure of the minimal prejudicial impact of the trial counsel's argument. *See United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (citation omitted).

### 3. Analysis

On Appellant's first point, that trial counsel mischaracterized the evidence of Appellant's career performance, we agree with Appellant that this was error. Appellant's *entire* career was not plagued "by nothing but bad conduct." There were no facts presented to the members suggesting Appellant's leadership believed he had any disciplinary problems before the earliest charged timeframe in November 2018.

We also agree trial counsel argued facts not in evidence. Regarding Appellant's possession of the firearm in his dorm room, trial counsel argued to the members that they were allowed to draw an inference that when law enforcement personnel showed up at his dorm room on 3 July 2019, it was not the first time he "actually had that gun in his dorm room." Trial counsel continued: "So who knows which one of his buddies he was showing that weapon to for the past month. Who knows how he was playing with that weapon for the past month in his dorm room?" Trial counsel is limited to arguing reasonable inferences derived from "the evidence of record." *Baer*, 53 M.J. at 237. During his providence inquiry, Appellant stated the gun was off-base until he unknowingly brought it onto base on 3 July 2019; the Government presented no evidence to rebut that portion of Appellant's statement. While there was some evidence Appellant possessed the firearm for some period of time, there was no evidence he had it in his room beyond the charged timeframe; it was improper for trial counsel to invite the members to speculate about uncharged misconduct. We find error with this portion of trial counsel's argument, and that such error was clear or obvious.

With respect to trial counsel's argument that Appellant lacked remorse and his comments about Appellant's addiction, we will assume for purposes of our analysis, without deciding, that these comments amounted to clear or obvious error.

We disagree with Appellant's claim that trial counsel's use of personal pronouns amounted to improper argument. Trial counsel's argument was approximately seven pages of the transcript, and, while perhaps inartful at times (particularly his use of "us"), trial counsel's use of personal pronouns was not so prevalent to lead this court to believe that he was trying to impermissibly vouch for the evidence or curry favor with the members. Trial counsel's use of "I" appears to have been transitory, connecting his thoughts with the evidence; his use of "we" appears to be have been in reference to the Prosecution or the evidence in general. We find no error on this point.

Given that we have found plain error, Appellant bears the burden of showing the clear or obvious errors in the trial counsel's argument resulted in material prejudice to his substantial rights. Using the three factors set out in *Fletcher* to guide our determination, we find trial counsel's comments were not so damaging that we cannot be confident that Appellant was sentenced on the evidence alone. Trial counsel's argument on each of these points was relatively brief. We also note that trial defense counsel did not object to these portions of trial counsel's argument. After reviewing trial defense counsel's sentencing argument, this appears to have been deliberate, as trial defense counsel deftly attacked the reasonableness of trial counsel's argument. We specifically note this portion of the Defense's argument:

> Trial counsel, again, made some theory about how [Appellant] was partying, about how he wanted to celebrate the New Year. I don't think you should buy that. How can you buy that? What did [Appellant] have to look forward to? He was being court-martialed. He was going to plead guilty to five charges and specifications, and you think he was celebrating on New Year's Eve? He told you his friend committed suicide, and then his [C]hief. Double hit. He told you that he didn't know what to do, and he went to his old ways to get that artificial happiness, and he smoked methamphetamine. Consider this, Members. Consider those two choices. That was what he was deciding between: committing suicide or smoking methamphetamine. How many people can actually say that methamphetamine saved their life? That's tragic. But it saved [Appellant]'s life in that moment. That is the image of someone who is circling the drain. Fighting not to be sucked into its abyss. It's not a party.

In reviewing both arguments, we do not view trial counsel's comments to be so severe as to question whether members sentenced Appellant based on the evidence.

There were no curative measures specifically taken by the military judge to address the error in trial counsel's argument. This factor weighs in Appellant's favor.

Finally, Appellant would have us heavily weigh trial counsel's comments against the nature of his offenses and weight of the evidence. After full consideration of Appellant's service record and sentencing case, the weight of the evidence favors the Government. Appellant pleaded guilty to five offenses. During the sentencing proceedings, the members listened to the audio recording of the providence inquiry between the military judge and Appellant. *See United States v. Holt,* 27 M.J. 57, 59 (C.M.A. 1988); *see United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969). Appellant's illegal drug use occurred over the course of more than a year and involved three different drugs, as well as another substance used to alter his mood or function. Appellant's methamphetamine use was significant both in the amount he used and in the regularity of his use for more than a year. It is also hard to ignore that Appellant was found in his car, on base, unresponsive, after using cocaine, methamphetamine, and marijuana. Finally, by his own admission, Appellant used illegal drugs frequently. Appellant has not shown that the members disregarded any of his sentencing evidence and relied on the alleged improper arguments to arrive at their sentence.

Trial counsel's comments, when taken as a whole, do not appear to have impacted the members' deliberation, especially considering trial counsel argued for a bad-conduct discharge and the panel did not adjudge a bad-conduct

discharge. If the adjudged sentence tells us anything, it shows how seriously the members viewed Appellant's offenses and the due consideration they gave to his mitigation and extenuation matters. We find the trial counsel's sentencing argument did not materially prejudice Appellant's substantial rights and does not warrant relief. *See Frey*, 73 M.J. at 248.[9]

## B. Sentence Appropriateness

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to determine sentence appropriateness, "which reflects the unique history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

### 2. Analysis

Appellant argues his sentence is inappropriately severe, in part, because he was sentenced to the jurisdictional maximum at a special court-martial for confinement and forfeiture of pay. Appellant pleaded guilty to two specifications of wrongful use of methamphetamine on divers occasions, wrongful use of cocaine on divers occasions, and wrongful use of marijuana, as well as abusing isobutyl nitrate on divers occasions and storing a firearm in his dormitory room. His drug use was not limited to a short duration, but spanned the course of more than a year. During the presentencing phase, the Government presented Appellant's interview with AFOSI, where he described using methamphetamine as much as eight times a month for nine months. Appellant's drug use was so pronounced that he was found unresponsive in his car and later taken to the emergency room, where he would test positive for three illegal substances.

---

[9] In reaching this conclusion, we have considered the individual and cumulative impact of the trial counsel's errors.

Appellant provided an unsworn statement in a question-and-answer format with his trial defense counsel. During this exchange, Appellant discussed his family situation, noting his family's issues with drug addiction and alcoholism, and describing how he ended up in the foster care system. Appellant also discussed his decision to use drugs in December 2018 and how he "let [him]self falter because [he] was hitting a low point in [his] career and [his] life." Appellant also told the members about his mental health, anxiety, and sleeping issues. Further, when asked by trial defense counsel whether he was a drug addict, Appellant responded, "[I]t's hard to admit that you're a drug addict and I believe that I am a drug addict based on the definition of 'drug addict.'" In appealing to the members about his possible punishment, Appellant asked the panel that he not be discharged, but "get treatment." Most telling is that in Appellant's written unsworn statement, Appellant specifically stated, "If you are tempted to give me a bad conduct discharge, please know that I would prefer several more months of confinement as opposed to a bad conduct discharge, so at least then I could continue treatment when I am released from confinement so that I can get well."

The court acknowledges that Appellant presents a sympathetic explanation of his mental health and personal issues. However, we cannot ignore Appellant's extensive and long-term drug use. Drug use, particularly the regular use of methamphetamine, is a serious offense—regardless of whether it was done to cope with extraordinary stress or significant mental health issues. Given that Appellant did not receive a bad-conduct discharge, the members did exactly what Appellant requested of them. Having considered Appellant, the nature and seriousness of his admitted offenses, and all matters contained in the record of trial, to include matters Appellant submitted in his case in extenuation, mitigation, and clemency, we conclude the sentence is not inappropriately severe.

## C. Convening Authority Decision on Action

### 1. Additional Background

Appellant's court-martial adjourned on 27 February 2020. On 8 March 2020, Appellant's trial defense counsel submitted Appellant's clemency request, wherein Appellant asked the convening authority to not approve the adjudged forfeitures or his reduction in rank. Appellant's trial defense counsel provided several reasons to support these requests.

On 19 March 2020, the convening authority signed a Decision on Action memorandum. In that memorandum, the convening authority issued the adjudged reprimand, but denied Appellant's requests to disapprove his forfeitures and reduction in rank, taking "no action" on the findings or sentence. He also stated, "Before declining to take action in this case, I considered matters

timely submitted by the accused under [Rule for Courts-Martial (R.C.M.)] 1106."

### 2. Law and Analysis

At the time the convening authority signed the Decision on Action memorandum in this case, Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), advised convening authorities to apply the version of Article 60, UCMJ, in effect at the time of the earliest offense.[10] At the same time, the instruction equated a convening authority's decision to take "no action" with granting no clemency relief, explaining:

> A decision to take action is tantamount to granting relief, whereas a decision to take no action is tantamount to granting no relief. Granting post-sentencing relief (i.e. "taking action") is a matter of command prerogative entirely within the discretion of the convening authority, as limited by the applicable version of Article 60, UCMJ.

AFI 51-201, ¶ 13.17.1.

During the pendency of this appeal, the United States Court of Appeals for the Armed Forces (CAAF) decided *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 818 (C.A.A.F. 7 Sep. 2021) (per curiam), holding:

> [I]n any court-martial where an accused is found guilty of at least one specification involving an offense that was committed before January 1, 2019, a convening authority errs if he fails to take one of the following post-trial actions: approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part.

*Id.* at *1.

In *Brubaker-Escobar*, the CAAF found the convening authority's failure to explicitly take one of those actions was a "procedural error." *Id.* at *2, *7–8. The court noted: "Pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018), procedural errors are 'test[ed] for material prejudice to a substantial right to determine whether relief is warranted.'" *Id.* at *8 (alteration in original) (quoting *United States v. Alexander,* 61 M.J. 266, 269 (C.A.A.F. 2005)). The court held the convening authority's error in taking "no action" was harmless because the appellant did not request clemency and the convening authority

---

[10] Specifically, AFI 51-201, ¶ 13.16, stated: "To determine the applicable version of Article 60, look at the date of the earliest offense resulting in a conviction. The version of Article 60 in effect on that date applies to the entire case."

could not have granted meaningful clemency regarding any portion of the adjudged sentence. *Id.*

In this case, the convening authority made a procedural error when he took no action on the sentence. In testing for prejudice, we have examined the convening authority's decision on action and find Appellant suffered no material prejudice to a substantial right. First, although the convening authority was powerless to grant clemency on the adjudged findings per Article 60(c)(3)(A), UCMJ, 10 U.S.C. § 860(c)(3)(A), and on Appellant's adjudged sentence of confinement per Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(3)(A), he could grant clemency on Appellant's adjudged forfeitures, reduction in grade, and reprimand. Article 60(c)(2)(B), 10 U.S.C. § 860(c)(2)(B). Appellant submitted a thorough clemency request outlining why his request was reasonable—matters the convening authority stated he considered before he decided not to grant any relief. Second, the words of the reprimand are specified in the Decision on Action memorandum, so we are confident the convening authority considered this case. Finally, Appellant makes no argument on appeal that he was prejudiced by the convening authority's failure to either approve, disapprove, commute, or suspend the adjudged forfeitures or reduction in rank in whole or in part. We conclude Appellant did not suffer material prejudice to a substantial right.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

KEY, Senior Judge (concurring in part and dissenting in part):

I agree with my esteemed colleagues in the majority with their resolution of all of the issues raised by Appellant, save one: that Appellant's record should not be remanded for action by the convening authority. On this point, I respectfully dissent.

As the majority explains, the convening authority erred by not taking action on Appellant's sentence—that is, he did not approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part, as required by the version of Article 60, UCMJ, 10 U.S.C. § 860, applicable to Appellant's case. Indeed, in his Decision on Action memorandum, the convening authority unambiguously declared, "I take no action on the findings in this case," and "I take no action on the sentence in this case." Although he set out

the terms of Appellant's reprimand, the convening authority made no reference to Appellant's sentence to confinement, forfeitures, or reduction in grade.[1]

Starting in 1983, Congress required convening authorities to affirmatively act on court-martial sentences and granted those officers permissive—and largely unfettered—discretion to act on the findings. Article 60, UCMJ, and Rule for Courts-Martial 1107, *Manual for Courts-Martial, United States* (1984 ed.). Even after Congress began curtailing convening authorities' powers with respect to modifying findings and sentences in 2014, convening authorities were still required to affirmatively take action on the cases they had referred to courts-martial when those cases resulted in adjudged sentences. *See* National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66 (26 Dec. 2013). Only on 1 January 2019 were convening authorities given the option of deciding to simply not act at all on a given sentence. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328 (23 Dec. 2016), as implemented by Executive Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018).

Thus, for three and a half decades, the military's commander-driven justice system involved convening authorities determining which charges to refer to court-martial for trial, personally selecting the members to serve on panels in those courts-martial, and then affirmatively approving or modifying the adjudged sentences. In other words, in pursuit of military readiness, discipline, and morale, convening authorities were tasked with not just initiating courts-martial, but with conclusively ratifying them as well. *See, e.g.*, *United States v. Blodgett*, 20 M.J. 756, 758 (A.F.C.M.R. 1985). Whether this arrangement was the optimal means of imparting justice has been the subject of debate, but what is not up for debate is that this was the system Congress and the President had established. I submit that the change at issue here—allowing a convening authority to decide not to take any action at all on a sentence—is not some minor administrative tweak to the Uniform Code of Military Justice, but rather a substantive shift in the commander's role in the military justice system.

---

[1] In other cases we have reviewed, we have concluded convening authorities implicitly referenced a sentence to confinement when they direct appellate leave. *See, e.g.*, *United States v. Brown*, No. ACM 39854, 2021 CCA LEXIS 419, *6 (A.F. Ct. Crim. App. 19 Aug. 2021). In Appellant's case, the convening authority did not direct appellate leave or otherwise refer to confinement.

In this case, the convening authority did issue Appellant's reprimand, but apparently decided to take no action with respect to the remainder of the sentence.[2] The convening authority had no power to modify Appellant's sentence to confinement, but he could have modified the adjudged reduction in grade and the adjudged forfeitures—exactly as Appellant requested in his clemency submission. Even though the convening authority was required to take action in this case, he did not, leaving us only to speculate as to whether he concluded Appellant's adjudged sentence was appropriate or if he simply elected not to involve himself in the matter.

Under the pre-1 January 2019 rules, it was not uncommon for military appellate courts to return records for the resolution of ambiguities with respect to convening authorities' actions based on the premise that such ambiguities rendered the required actions deficient. *See, e.g.*, *United States v. Captain*, 75 M.J. 99, 105–06 (C.A.A.F. 2016); *United States v. Politte*, 63 M.J. 24, 25–27 (C.A.A.F. 2006). This was rooted in the recognition that convening authorities were required to both affirmatively and unambiguously act in every case with an adjudged sentence. *See, e.g.*, *United States v. Phillips*, 64 M.J. 410, 412 (C.A.A.F. 2007). As noted above, Appellant's case fell under the older rules, rendering the convening authority's decision not to take action erroneous. But this error is no longer jurisdictional—it is instead procedural, which means the salient question in this case is whether there was material prejudice to a substantial right of Appellant. *United States v. Brubaker-Escobar*, __ M.J. __, No. 20-0345, 2021 CAAF LEXIS 818, at *7–8 (C.A.A.F. 7 Sep. 2021) (per curiam).

In *Brubaker-Escobar*, an Army appellant was sentenced to a bad-conduct discharge and reduction to the grade of E-1. As with Appellant's case, the former version of Article 60, UCMJ, applied, and the convening authority similarly declared he was taking no action. The Court of Appeals for the Armed Forces concluded the appellant was not prejudiced and was therefore not entitled to relief for three reasons: (1) the appellant did not seek clemency; (2) the convening authority lacked the power to modify the punitive discharge; and (3) the punitive discharge meant the appellant's grade would be automatically reduced to E-1 by operation of Article 58a, UCMJ, 10 U.S.C. § 858a, in conjunction with an Army regulation. *Id*. at *8. Appellant's case, however, is nearly

---

[2] Considering that courts-martial are not authorized to specify the wording of a reprimand, and only a convening authority may do so, the fact the convening authority here provided the terms for the adjudged reprimand would seem to provide minimal insight into his consideration of the other aspects of Appellant's sentence. *See* Rule for Courts-Martial 1003(b)(1), Discussion, *Manual for Courts-Martial, United States* (2019 ed.).

the complete opposite: (1) Appellant did seek clemency, (2) the convening authority did have the power to modify Appellant's forfeitures and reduction in grade, and (3) the automatic grade reduction highlighted in *Brubaker-Escobar* does not apply in Air Force cases.[3]

The majority in this case concludes Appellant has not shown he was prejudiced, yet Appellant squarely asked for relief within the convening authority's power.[4] Under the majority's rationale, it is difficult to imagine when, if ever, a servicemember would be prejudiced by a convening authority's failure to take action when he or she is required to do so. Thus, the majority's opinion operates to reduce convening authorities' obligations to take action under the prior version of Article 60, UCMJ, to a mere matter of form—a failing of which will apparently never call for corrective action.

I, however, am not persuaded that we should prematurely sweep convening authorities' significant obligations under the former Article 60, UCMJ, into the proverbial dustbin of history in cases where that law still specifically applies. Instead, I conclude servicemembers in such cases are entitled to have convening authorities arrive at their personal determination that the sentence is, in fact, appropriate and should be approved as adjudged or modified pursuant to a clemency request. A decision to take no action may mean the convening authority determined the adjudged sentence was appropriate, it may mean he adopted a blanket policy against modifying court-martial sentences, or it may mean he simply considered matters submitted by Appellant and decided nothing more needed to be done with the case. This ambiguity renders the convening authority's "no action" decision in this case insufficient to meet the relevant Article 60, UCMJ, requirements.

The convening authority in Appellant's case was obligated to affirmatively take action, but he did not. In the face of Appellant's request for clemency within the convening authority's power to grant, I would conclude the convening authority's decision to take "no action" materially prejudiced Appellant's

---

[3] *See* Department of the Air Force Instruction 51-201, *Administration of Military Justice*, ¶ A11.26.3 (18 Jan. 2019) ("The provisions of Article 58a[, UCMJ, 10 U.S.C. § 858a,] do not apply to the Air Force. All reductions in grade are based upon adjudged and approved sentences.").

[4] Contrary to the majority's suggestion, the convening authority did not explicitly deny Appellant's request for disapproval of his forfeitures and reduction in grade. Rather, the convening authority made no mention of either and instead simply noted he was taking "no action" on Appellant's sentence.

significant right to seek clemency under the rules applicable to his court-martial. Therefore, I respectfully dissent on this point.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court